656 So.2d 1332 (1995)
Norman ABRAMOWITZ, Appellant,
v.
Diane GLASSER and City of Tamarac, a municipal corporation, et al., Appellees.
No. 93-3664.
District Court of Appeal of Florida, Fourth District.
June 14, 1995.
Rehearing, Rehearing and Certification Denied July 28, 1995.
Gerald L. Knight of Gustafson, Stephens, Ferris, Forman & Knight, P.A., and Harry A. Stewart of Akerman, Senterfitt & Eidson, P.A., Fort Lauderdale, for appellant.
Harry O. Boreth and Lloyd S. Glasser of Glasser & Boreth, Plantation, for appellees.
Rehearing, Rehearing En Banc and Certification Denied July 28, 1995.
KLEIN, Judge.
The trial court invalidated a term limits amendment to the City of Tamarac's charter because the ballot summary did not adequately advise the voters of the substance of the amendment. We reverse.
The city is governed by five council members, four of whom are elected in separate districts, and a mayor who is elected city-wide. *1333 In 1984 the charter was amended by referendum to read as follows:
Beginning with the 1985 municipal election and effective for all elections thereafter, councilmembers (including the Mayor) who are elected to office shall not succeed themselves for more than one (1) term, without an intervening term, regardless of the district or seat they might hold; except that if otherwise qualified, the mayor or ex-mayor may run for council and a councilman or ex-councilman may run for mayor. (Emphasis added).
The ballot summary, the sufficiency of which is in question, did not refer to the emphasized exception. It stated:

FIRST PROPOSED AMENDMENT: An amendment providing that the elected officials of the City (Mayor, Councilmembers and Charter Board Members) may only be elected to any particular office for two (2) consecutive terms (totalling four (4) years). This would amend Sections 4.02 and 8.01 of the City Charter.
Two lawsuits were filed attacking the validity of this amendment, one on constitutional grounds, and the other based on a violation of section 101.161, Fla. Stat. (1984), which provides in pertinent part:
101.161 Referenda; ballots
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot ...
The substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.
The cases were consolidated, and the court ultimately concluded that the amendment violated the statutory ballot summary requirement, because the emphasized language in the amendment allowing the mayor to run for the council, and vice versa, was not included in the ballot summary. The court rejected the constitutional arguments, and they have not been appealed, so that the only issue before us is whether the ballot summary complied with the statute.[1]
A ballot summary must state the "chief purpose of the measure" Askew v. Firestone, 421 So.2d 151, 155 (Fla. 1982). However, it "need not explain every detail or ramification of the proposed amendment." Advisory Opinion to the Attorney General-Limited Political Terms in Certain Elective Offices, 592 So.2d 225 (Fla. 1991).
Although appellees cite a number of cases which they argue support their position, none of the cases involved a ballot summary which accurately set forth the substance of the proposal to be voted on, or omitted only exceptions which were narrower than the general proposal. Appellees rely heavily on Askew v. Firestone, 421 So.2d 151 (Fla. 1982); however, that case is easily distinguishable. The purpose of the amendment there was to remove an absolute two year ban on lobbying by former elected officials. By failing to make any reference to the existing ban, however, the ballot summary, which stated that the amendment prohibited lobbying for two years unless the former officials publicly disclosed their financial interests, made the amendment appear as if it limited lobbying by former officials, when in fact the amendment expanded it. Wadhams v. Board of County Commissioners, *1334 567 So.2d 414 (Fla. 1990), on which appellees also rely, is distinguishable for precisely the same reason as Askew.
Term limits, the subject of the amendment in the present case, is a general concept, and voters who are interested are either for or against limits. While voters in favor of term limits might think that this amendment, because of the exception, did not go far enough, the amendment would not mislead voters. It complies with § 101.161, which requires the ballot summary to contain the "substance of the amendment ... the chief purpose of the measure," and it fairly and sufficiently advised the voters so that they could intelligently make their decision as to how to vote. Hill v. Milander, 72 So.2d 796, 798 (Fla. 1954); Miami Dolphins Ltd. v. Metropolitan Dade County, 394 So.2d 981 (Fla. 1981).
This is not to say that this exception was not a significant one. It would have been the better practice, if this were the only exception, to have included it in the ballot summary, since it could have been done within the 75 word limit. Normally, however, where there are a number of exceptions, grandfather provisions, or other limiting factors, it would not be feasible to include all of them. A rule requiring all exceptions to be in the ballot summary, therefore, would not be practicable.
We therefore reverse and remand for entry of a judgment declaring the charter amendment valid.
FARMER, J., concurs.
POLEN, J., dissents with opinion.
POLEN, Judge, dissenting.
I respectfully dissent. In reversing, the majority does so based upon its opinion that the charter amendment was valid since term limits is a general concept, and voters who are interested are either for or against limits. The basis of my dissent rests upon my opinion that because the ballot summary language for the proposed amendment was not "clear and unambiguous," the voters of the City of Tamarac actually voted only for term limits, and not for an "exception" to term limits since they could not have voted for an exception which was not presented to them. See Askew v. Firestone, 421 So.2d 151, 155 (Fla. 1982) (the ballot must give the voter fair notice of the decision he must make). See also Falk v. City of Miami Beach, 538 So.2d 956, 957 (Fla. 3d DCA 1989), wherein the court, citing Smathers v. Smith, 338 So.2d 825, 829 (Fla. 1976), held that the voters "must be able to comprehend the sweep of each proposal from a fair notification in the proposition itself that it is neither less nor more extensive than it appears to be."
Notwithstanding the majority opinion that Askew is inapplicable to the instant case, I feel it applies for precisely the reasons the majority finds it inapplicable. In Askew, the supreme court found, as being unclear and ambiguous, a ballot summary which made the amendment appear as if it limited lobbying by former officials, when in fact the amendment expanded it. 421 So.2d 151 (Fla. 1982). Similarly, here, the ballot summary excluded crucial language which provides the very mechanism by which the amendment, which purports to limit terms, actually can expand them, thereby rendering the amendment impotent. In his concurring opinion in Askew, Justice Ehrlich stated:
In my opinion the proposed ballot summary is deceptive, because although it contains an absolutely true statement, it omits to state a material fact necessary in order to make the statement made not misleading.
Id. at 156.
Here, as the court found in Askew, "[t]he problem lies not with what the summary says, but, rather, with what it does not say." Id. (emphasis supplied). At issue in the instant case is the underlined portion of the 1984 amendment, in the majority's opinion, which, interestingly, is alternatively referred to as an "exception" clause (by the appellee) and as a "clarification" clause (by the appellant). I agree with the appellees that the term "exception" more accurately describes the purpose of the clause.
While the majority holds that "a rule requiring all exceptions to be in the ballot summary ... would not be practicable," I believe that, in this instance, the omission rises to the level of necessity rather than *1335 mere practicality. Here, by failing to contain an explanatory statement of the amendment, the ballot failed to inform the voters that the chief purpose purportedly set forth in the ballot summary (term limits for certain elected officials) is subject to an exception that virtually nullifies the limitation.
If, in fact, the explanatory language contained in the "clarification" clause is as superfluous to the purpose of the ballot summary as alleged by the appellant, then it follows that the summary would not alter the existing statute in any way. That being the case, then there would be no purpose for its existence in the first place. However, here the omission of explanatory language, which appellant deems "superfluous," is far from superfluous as it significantly alters the true meaning of the amendment, thereby impermissibly misleading the voters. Consequently, because of its omission, I would hold that the exception to term limits provision was properly stricken from the charter by the circuit court. For this reason I would affirm.
NOTES
[1] Appellees contend that the appellant, who was permitted to intervene in the case involving the constitutional issues, has no standing to appeal the judgment invalidating the amendment on nonconstitutional grounds. We conclude that the fact that the appellant did not formally move to intervene in the statutory case should not result in the dismissal of his appeal because of the manner in which the claims were intermingled here. While a party in one case does not necessarily become a party in another case merely because they are consolidated, see, e.g., American Employers Insurance Company v. J.H. Atkins & Associates, Inc., 332 So.2d 349 (Fla. 4th DCA 1976), appellant, by virtue of the manner in which these cases were intermingled after consolidation, was entitled to assume that it would not be necessary for him to formally move to intervene in the statutory case in order to appeal the single final judgment entered in both cases. Appellees do not argue that appellant would not have been entitled to intervene in the ballot summary case. They only argue that his failure to formally intervene deprives him of standing to appeal.